UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SHELLY BETH RAEBEL, *et al.*, | Case No. 3:19-cv-00742-MMD-WGC |
| Plaintiffs, | ORDER |
| v. | |
| TESLA, INC., | |
| Defendant. | |

## I.  SUMMARY

This action stems from a dispute relating to the alleged defective design of a vehicle produced by Defendant Tesla, Inc. ("Tesla"). (ECF No. 16.)[1] Tesla moves to (1) compel arbitration or, in the alternative, (2) to dismiss Plaintiffs' claims ("Motion"). (ECF No. 18.)[2] For the reasons discussed below, Tesla's Motion is granted in part and denied in part.

## II.  BACKGROUND

The following facts are adapted primarily from the FAC (ECF No. 16) and the briefs relating to the Motion.

Tesla is a company that produces and sells electric vehicles including the Tesla Model 3 ("Model 3"). (ECF No 16 at 4–5.) In either June or July 2018, Raebel placed an online order to purchase a Model 3. (ECF No. 18-2 at 2, ECF No. 21-1 at 2–3.) To complete online orders on Tesla's website, customers click a button labeled "Place Order". (ECF

---

[1] Plaintiffs Shelly Beth Raebel ("Raebel") and Paul Ritchie Wagner ("Wagner") filed a first amended complaint ("FAC") on January 23, 2020, making it the operative complaint. (ECF No. 16.) Accordingly, the Court denies Defendant's previous motion to compel arbitration (ECF No. 7) and Plaintiffs' motion for extension of time to respond (ECF No. 17) as moot.

[2] The Court has reviewed Plaintiffs' response (ECF No. 21) and Defendant's reply (ECF No. 22).

No. 18-1 at 2.) At the time Raebel placed the order, the button was accompanied by language stating "[b]y placing this order you agree to the Model 3 Order Agreement . . .." (*Id.*) The text "Model 3 Order Agreement" ("Agreement") contained an underlined hyperlink to the Agreement. (*Id.*)

The Agreement included an "Agreement to Arbitrate" provision ("Arbitration Provision"). (*Id.*) It states that "any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator . . .." (ECF No. 16-1 at 2.) The Arbitration Provision also states that before submitting a dispute to arbitration, the customer agrees to send written notice to Tesla describing the issue and that Tesla will have 60 days to resolve it. (*Id.*)

In October 2018, Plaintiffs visited a Tesla service center to receive their Model 3. (ECF No. 21-1 at 3.) As a part of the process, Raebel signed a document titled "Delivery Declaration". (*Id.*) This document states that by signing, "YOU AGREE WITH YOUR FINAL MOTOR VEHICLE PURCHASE AGREEMENT WHICH HAS BEEN UPLOADED TO AND IS AVAILABLE IN YOUR MYTESLA ACCOUNT." (ECF No. 18-2 at 16.)

On March 25, 2019, Raebel was involved in an accident while driving the Model 3. (ECF No. 16 at 12.) Raebel claims that the accident was caused by the vehicle's sudden unintended acceleration ("SUA"). (*Id.*)

In the FAC, Plaintiffs allege that defective design caused the Model 3 to experience SUA. (*Id.* at 13–15.) Plaintiffs assert the following claims: strict product liability, negligence, breach of express warranty, breach of implied warranty, violation of Nevada's Uniform Deceptive Trade Practices Act ("DTPA"), and breach of written warranty under the Magnuson-Moss Warranty Act ("MMWA"). (*Id.* at 13–24.) Plaintiffs seek injunctive relief for their DTPA and MMWA claims, including an order that Defendant repair, recall, and/or replace Model 3 vehicles and provide Plaintiffs with notice about the cause of the alleged SUA. (*Id.* at 22, 24.)

///

///

### III. LEGAL STANDARDS

#### A. Federal Arbitration Act

"The [Federal Arbitration Act ("FAA")], 9 U.S.C. § 1 *et seq.*, requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing 9 U.S.C. § 3). The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue. *Id.* (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 11236, 1130 (9th Cir. 2000)). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . .." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). Thus, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

#### B. 12(b)(1) Legal Standard

"Article III of the Constitution limits federal courts' jurisdiction to certain Cases and Controversies." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013) (internal citations omitted). "A suit brought by a plaintiff without Article III standing is not a case or controversy, and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (internal citations omitted); *see also* Fed. R. Civ. P. 12(b)(1). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000).

The "irreducible constitutional minimum" to establish Article III standing requires

three elements. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). To survive a motion to dismiss, "the plaintiff must clearly allege facts demonstrating each element." *Id*. To establish standing for injunctive relief, "[t]he plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal citations omitted). To demonstrate a likelihood of future harm, a plaintiff must establish "a real and immediate threat of repeated injury." *Id*. (internal quotation marks omitted.)

## IV.    DISCUSSION

Defendant's Motion seeks to compel arbitration under the Arbitration Provision and to sever Plaintiffs' injunctive relief claims, which they argue should be dismissed for lack of standing. (ECF No. 18 at 10, 18–20.) Defendant also argues in the alternative that many of the claims, whether subject to arbitration or not, are subject to dismissal under Rule 12(b)(6). (*Id.* at 6.) Because the Court agrees with Defendant's primary argument, the Court declines to address the alternative argument for dismissal for failure to state a claim.

### A.    Arbitration

To enforce an arbitration agreement, the Court must determine (1) whether the parties agreed to arbitrate their disputes, and (2) if the claims in dispute are within the scope of the arbitration agreement. *See Nguyen*, 763 F.3d at 1175. In making these determinations, the Court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Nevada law[3] a "contract will be enforced as written" where "the language of the contract

---

[3]The Agreement is governed by Nevada law. (See ECF No. 16-1 at 3 ("The terms of this Agreement are governed by . . . the laws of the State . . . that is nearest to your

4

is clear and unambiguous." *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015).

Here, Plaintiffs agreed to the Arbitration Provision at least twice. First, when Raebel completed the online order of the Model 3 and agreed to the Model 3 Order Agreement. (*See* ECF No. 18-1 at 3; ECF No. 21-1 at 3–4.) Second, when Raebel signed the Delivery Declaration at the Tesla sales center, thereby affirming Plaintiffs' assent to the Agreement. (ECF No. 21-1 at 3; ECF No. 18-2 at 16.) Moreover, the Arbitration Provision unambiguously states that it applies to "any dispute arising out of or relating to any aspect of the relationship between [Plaintiffs] and Tesla", exempting only unenforceable claims "such as [claims for] injunctive or declaratory relief." (ECF No. 16-1 at 2.) Here, the majority of Plaintiffs' claims stem from the SUA and seek monetary damages—therefore, the claims fall within the scope of the Arbitration Provision.[4] (ECF No. 16 at 13–24.) Because Plaintiffs agreed to arbitrate their claims and because Plaintiffs' strict product liability, negligence, and breach of express and implied warranty claims are within the scope of the Arbitration Provision, the Arbitration Provision is enforceable against Plaintiffs.

Plaintiffs' two primary arguments against the enforceability of the Arbitration Provision are unpersuasive. First, Plaintiffs argue that the Arbitration Provision is unenforceable in regard to Wagner because he never assented to the Agreement. (ECF No. 21 at 13–14.) However, Plaintiffs allege that "Tesla and Plaintiffs entered into the Motor Vehicle Purchase Agreement . . . at the time of the sale." (ECF No. 16 at 11.) Having already admitted that both Plaintiffs entered into the Agreement with Tesla, Plaintiffs cannot now claim that Wagner never assented to the Agreement. *See Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions."); *In re Barker*, 839 F.3d 1189, 1195 (9th Cir. 2016) ("Judicial

---

address indicated in your vehicle configuration"); see also ECF No. 16-3 (stating that both Plaintiffs are Nevada residents).)

[4]The arbitrability of Plaintiffs' DTPA and MMWA claims are discussed below. *See infra* Section IV.B.

admissions are conclusively binding on the party who made them.").

Second, Plaintiffs argue that the Arbitration Provision is procedurally and substantively unconscionable. (ECF No. 21 at 14–19.) "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018). Plaintiffs bear the burden of establishing that the Arbitration Provision is procedurally and substantively unconscionable. *See L & M Creations v. CRC Info. Sys.*, 2:10–cv–00685–GMN–GWF, 2011 WL 1103636, at *6 (D. Nev. Mar. 23, 2011); *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004) *overruled on other grounds by U.S. Home Corp.*, 415 P.3d 32. The Court finds that Plaintiffs have not met their burden of establishing procedural unconscionability. Therefore, the Court does not reach Plaintiffs' substantive unconscionability arguments. *See U.S. Home Corp.*, 415 P.3d at 42 (declining to address substantive unconscionability where Plaintiff failed to establish procedural unconscionability).

"A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton,* 96 P.3d at 1162, *overruled on other grounds by U.S. Home Corp.*, 415 P.3d 32.

Plaintiffs assert a lack of meaningful time to review the Agreement—that they never had a chance to review the Agreement before signing, that a Tesla sales representative rushed Raebel into signing the Delivery Declaration without first explaining its terms, and that the Agreement was uploaded to Plaintiffs' MYTESLA account only after the sales contract was signed.[5] (ECF No. 21 at 15–17.) The Court rejects this argument because Plaintiffs had opportunities to review the Agreement before it became effective. But, even

---

[5]Plaintiffs do not allege unequal bargaining power between them and Tesla, nor do they claim that the effects of the Arbitration Provision are not ascertainable from reviewing the contract. (ECF No. 21 at 15–17.)

6

accepting Plaintiffs' allegations that Raebel was rushed by a sales representative and that the Agreement was uploaded only after the sales contract was signed, Plaintiffs had a meaningful opportunity to review the Arbitration Provision when they placed the online order for the vehicle. As Defendant notes, and Plaintiffs do not dispute, there was language directly above the "Place Order" button that stated "[b]y clicking 'Place Order' I agree to the Model 3 Order Agreement . . .." (ECF No. 18-1 at 3.) The words "Model 3 Order Agreement" were an underlined hyperlink that directed to a copy of the Agreement. (*Id.* at 2–3.) Because of this, Plaintiffs had a meaningful opportunity to review the Agreement when they placed their online order and could take their time reviewing the Agreement before they place their order. *See Wiseley v. Amazon.com, Inc.*, 709 F. App'x. 862, 864 (9th Cir. 2017) (finding no procedural unconscionability where Plaintiff clicked a button agreeing to a hyperlinked arbitration agreement to complete an online purchase).

Plaintiffs insist that Defendant has failed to offer evidence that Plaintiffs actually clicked the "Place Order" button and, accordingly, accepted the terms of the Agreement. (ECF No. 21 at 16.) Plaintiffs are incorrect. Defendant has provided Plaintiffs' "Vehicle Configuration" showing that Plaintiffs placed an online order for the vehicle. (*See* ECF No. 18-2 at 2, 4.) Additionally, Plaintiffs' argument is contradicted by Raebel's own declaration, which states "[I] placed an online order to purchase the subject 2018 Tesla Model 3." (ECF No. 21-1 at 3–4.) Notably, Plaintiffs do not allege that they were somehow able to complete the online purchase without clicking the "Place Order" button. Accordingly, the Court finds that Plaintiffs accepted the terms of the Agreement when they placed their online order.

Plaintiffs next argue that the Arbitration Provision is procedurally unconscionable because it is inconspicuous and does not put the purchaser on notice that they are waiving important rights. (ECF No. 21 at 15–16.) Plaintiffs rely on two Nevada Supreme Court cases—*D.R. Horton,* 96 P.3d at 1162 and *Gonski v Second Judicial* 245 P.3d 1164, 1170 (Nev. 2010)—as support. (*Id.*) However, the Nevada Supreme Court has explicitly overruled both of these cases on this very point, holding that "[r]equiring an arbitration clause to be more conspicuous than other contract provisions . . . is exactly the type of

law the Supreme Court has held the FAA preempts because it imposes stricter requirements on arbitration agreements than other contracts generally." *U.S. Home Corp.*, 415 P.3d at 41. Therefore, the Court rejects Plaintiffs' argument that the Arbitration Provision is procedurally unconscionable because it is inconspicuous.[6]

Because the Arbitration Provision is valid as to both Plaintiffs and because it is not unconscionable, the Court grants Defendant's motion to compel arbitration on all of Plaintiffs' claims, except as discussed below.

**B. Standing to Seek Injunctive Relief**

Defendant contends that Plaintiffs do not have standing to seek injunctive relief because they have not established a likelihood of future harm. (ECF No. 18 at 18–20.) Specifically, Defendant argues that because Plaintiffs have failed to allege that they intend to purchase a new Model 3 or use the subject Model 3 in the future, there is no risk of future harm. (*Id.*) The Court agrees. Plaintiffs' FAC contains no factual allegations indicating that they intend to use their Model 3, or any Model 3, again in the future. As such, they have not established that they could be subject to the alleged SUA issue again and cannot allege any possibility of future harm. *See Bates*, 511 F.3d at 985. Accordingly, the Court dismisses all of Plaintiffs' requests for injunctive relief for lack of standing.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant's motion to compel arbitration or, in the alternative, motion to dismiss (ECF No. 18) is granted in part and denied in part as explained above. The Court orders arbitration of all claims, except for Plaintiffs' request

---

[6]To the extent that Plaintiffs also argue that the Arbitration Provision is procedurally unconscionable because it is not reciprocal (ECF No. 21 at 16), Plaintiffs are wrong. The provision binds Tesla as well as Plaintiffs. (*See* ECF No. 18-1 at 5 (stating that it "applies to any dispute between [Plaintiffs] and Tesla.")

8

for injunctive relief as to their DTPA and MMWA claims which are dismissed for lack of standing.

It is further ordered that Defendant's initial motion to compel arbitration (ECF No. 7) is denied as moot.

It is further ordered that Plaintiffs' motion to extend time to file opposition to Defendant's motion (ECF No. 17) is denied as moot.

This case is stayed pending arbitration. The parties are directed to file a status report within 15 days from conclusion of arbitration.

The Clerk is instructed to administratively close this case.

DATED THIS 3rd day of April 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE